FRANK R. JOZWIAK, Wash. Bar No. 9482
THANE D. SOMERVILLE, Wash. Bar No. 31468
Morisset, Schlosser & Jozwiak
801 Second Avenue, Suite 1115
Seattle, WA 98104-1509
Telephone: 206-386-5200
Facsimile: 206-386-7322
E-mail: f.jozwiak@msaj.com
         t.somerville@msaj.com
Attorneys for Plaintiff Quechan Indian Tribe

BRYAN R. SNYDER, Cal. Bar No. 125212
Law Office of Bryan R. Snyder
1245 Island Avenue
San Diego, California 92101
Telephone:    619-398-8379
Facsimile:    619-398-8377
E-mail: BSnyder@SDtrialattorney.com
Local Counsel for Plaintiff Quechan Indian Tribe

# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION, a federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; United States Bureau of Land Management; Ken Salazar, Secretary of the Interior; Robert Abbey, Director, Bureau of Land Management; Teri Raml, District Manager, BLM California Desert District; Margaret Goodro, Field Manager, BLM El Centro Field Office<br><br>Defendants | Civil Action No. **'10 CV 2241 LAB CAB**<br><br>COMPLAINT OF QUECHAN INDIAN TRIBE FOR DECLARATORY AND INJUNCTIVE RELIEF |

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 1

LAW OFFICES
MORISSET, SCHLOSSER & JOZWIAK
1115 Norton Building, 801 Second Avenue
Seattle, Washington 98104-1509
Tel: 206-386-5200 Fax: 206-386-7322

# I.   INTRODUCTION

1.     On October 13, 2010, the United States Department of the Interior ("Interior") published notice of a *Record of Decision for the Imperial Valley Solar Project and Amendment to the California Desert Conservation Area Land Use Management Plan* (hereinafter, the "Imperial Valley ROD").  75 Fed. Reg. 62853.

2.     The Imperial Valley ROD was signed on October 5, 2010 by the Secretary of the Interior Ken Salazar and on October 4, 2010, by the Director of the Bureau of Land Management Robert Abbey.

3.     The Imperial Valley ROD approves issuance of a right-of-way to a private corporation for the development of a utility-scale 709-megawatt solar power project (the "IVS Project") on 6,144 acres of public lands that contain hundreds of cultural resources eligible and potentially eligible for listing on the National Register of Historic Places, and that are home to sensitive biological resources and species proposed for listing on the Endangered Species Act, such as the Flat-Tailed Horned Lizard.

4.     The public lands that are the subject of the Imperial Valley ROD are within the traditional territory of the Quechan Indian Tribe and contain cultural and biological resources of significance to the Tribe, its government, and its members.

5.     The public lands that are the subject of the Imperial Valley ROD are located within the California Desert Conservation Area and have been designated by the Department of the Interior as Class-L "Limited Use" lands, which are designated to "protect sensitive, natural, scenic, ecological, and cultural resource values" and are required to be "managed to provide for generally lower-intensity, carefully controlled multiple use of resources, while ensuring that sensitive values are not significantly diminished."  California Desert Conservation Area Plan (CDCA Plan), p. 13.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 2

6.     The proposed IVS Project, once completed, will consist of 30,000 independent "Suncatcher" facilities spread across 6,144 acres of public land and will be either the largest or one of the largest solar power utility developments in the United States.

7.     Interior's issuance of a right-of-way, and amendment of the CDCA Plan, for the purpose of permitting construction and operation of the IVS Project on these specific Class L lands, and permitting the destruction of sensitive resources on these lands, is unlawful.

8.     The IVS Project is only one of many large solar and renewable energy projects located on California desert lands that have recently been approved, or are under consideration for approval, by Interior.

9.     The administrative process leading up to the execution and implementation of the Imperial Valley ROD, including Interior's inadequate evaluation of the cumulative impact of the IVS Project in conjunction with the multitude of other large-scale commercial solar, wind, and other energy projects planned in and around the California Desert Conservation Area; and the failure to complete an evaluation of impacts to cultural resources under NEPA and Section 106 of the National Historic Preservation Act prior to issuance of the Imperial Valley ROD, was unlawful.

10.    The Tribe seeks a declaratory judgment that the United States Department of the Interior, the Bureau of Land Management, and its officials, officers and agents (collectively "Interior") have violated and are violating federal laws, regulations, and policies including the Federal Land Policy and Management Act (FLPMA); National Historic Preservation Act (NHPA); National Environmental Policy Act (NEPA); Administrative Procedures Act (APA); and the California Desert Conservation Area Land Use Management Plan (CDCA Plan) by approving, executing, and implementing the Imperial Valley ROD.

11.    The Tribe seeks an order vacating the Imperial Valley ROD including the Amendment to the CDCA Plan; an order permanently enjoining issuance of a right-of-way and Notice to Proceed for the IVS Project on these Class L lands; and an order permanently

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 3

1   enjoining amendment of the CDCA Plan for development of the IVS Project on these Class-L

2   lands.

3          12.    To avoid irreparable injury to the Quechan Indian Tribe and the cultural and

4   biological resources of concern pending completion of this litigation, the Tribe seeks

5   preliminary injunctive relief to enjoin any issuance of a right-of-way or Notice to Proceed,

6   enjoin any ground-disturbing activities authorized under a Notice to Proceed, and enjoin any

7   further implementation of the Imperial Valley ROD.

8                     **II.    JURISDICTION AND VENUE**

9          13.    This action involves claims arising under federal laws including the

10   Administrative Procedures Act, 5 U.S.C. §§ 551 *et seq.*, the National Environmental Policy

11   Act, 42 U.S.C. § 4321 *et seq.*, the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.*,

12   the Federal Land Policy and Management Act, 43 U.S.C. § 1701 *et seq.*, and the Declaratory

13   Judgment Act, 28 U.S.C. § 2201.  The Court has jurisdiction over this action pursuant to

14   5 U.S.C. § 702, 28 U.S.C. § 1331, and 28 U.S.C. § 1362, as this matter is an action brought by

15   an Indian tribe with a governing body duly recognized by the Secretary of the Interior and

16   arising under the Constitution, laws, or treaties of the United States.

17          14.    Pursuant to 28 U.S.C. § 1391(e), venue is proper in this Court, the United States

18   District Court for the Southern District of California, because this action relates to federal

19   lands located within this judicial district and a substantial part of the events giving rise to the

20   claims occurred in this judicial district.

21                          **III.    PARTIES**

22          15.    Plaintiff Quechan Indian Tribe (herein, the "Tribe") is a federally-recognized

23   Indian tribe with a governing body recognized by the Secretary of the Interior.  The lands and

24   resources of the Fort Yuma Indian Reservation were reserved to the Tribe through the

25   Executive Order of January 9, 1884, as modified by Executive Order of December 19, 1900,

26

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 4

and confirmed by Secretarial Orders of December 20, 1978, and February 6, 1981. 46 Fed. Reg. 11372, 11373 (1981).

16.     By filing this action, the Tribe does not waive its sovereign immunity and does not consent to suit as to any claim, demand, offset, or cause of action of the United States, its agencies, officers, agents, or any other person or entity in this or any other court.

17.     Defendants are the United States Department of the Interior; Bureau of Land Management; Ken Salazar, Secretary of the Interior; Robert Abbey, Director, Bureau of Land Management; Teri Raml, District Manager, BLM California Desert District; and Margaret Goodro, BLM Field Manager, El Centro Field Office.

18.     Defendant United States Department of the Interior is responsible for administration and management of federal lands, including those lands under the jurisdiction of the Bureau of Land Management.

19.     Defendant Ken Salazar is Secretary of the United States Department of the Interior and named herein in an official capacity.

20.     Defendant Robert Abbey is Director of the United States Bureau of Land Management and named herein in an official capacity.

21.     Defendant Teri Raml is District Manager of the United States Bureau of Land Management California Desert District Office and named herein in an official capacity.

22.     Defendant Margaret Goodro is Field Manager of the United States Bureau of Land Management El Centro Field Office and named herein in an official capacity.

## IV.     GENERAL ALLEGATIONS

### A.     Interest of the Quechan Tribe

23.     For thousands of years, the Quechan Tribe and tribal ancestors traditionally occupied, traveled, traded, and utilized resources within a broad geographical area located within the desert lands of modern-day Arizona and Southern California.

24. By Executive Order of January 9, 1884, President Arthur set aside approximately 45,000 acres of traditional land of the Quechan Tribe within the state of California as a Reservation for the Quechan Indian Tribe. Such land is located along the Colorado River adjacent to present-day Yuma, Arizona. As a result of changes in the channel of the Colorado River, a portion of the Fort Yuma Reservation now lies within the state of Arizona. The Reservation borders Baja California, Mexico to the south. There are approximately 3,500 members of the Quechan Tribe, many of whom live on the Fort Yuma Reservation or in the town of Winterhaven, California and the city of Yuma, Arizona, both of which are contiguous to the Reservation boundaries.

25. The Tribe is unique because it is still located within its adjudicated traditional territory. The Tribe was not moved or conquered by Spain, Mexico, early Yuma settlers, or the United States, although the Tribe's original land base has been significantly diminished.

26. The Tribe's traditional territory extends beyond the Reservation's exterior boundaries, encompassing lands that are the subject of this action. The western traditional territory of the Tribe extended to the area surrounding California's Cahuilla mountains.

27. Interior has acknowledged the traditional use of the IVS Project area by Quechan ancestors. *See* Draft EIS (re IVS Project), C.2-40 through C.2-45.

28. Protection of the Tribe's cultural heritage is of significant importance to the Tribe. The Tribal Council established the Quechan Cultural Committee to promote, protect, and preserve Quechan culture, language, religion, history, and ancient sites and artifacts and to advise the Tribe on matters relating to such things. The Committee includes tribal elders selected to protect Quechan history, identity, and spiritual practices. The Committee works closely with the Tribe's Historic Preservation Officer and the Tribal Council to ensure protection and preservation of cultural resources of significance to the Tribe, whether located within or outside Reservation boundaries.

29.    The Tribe's cultural resources are historically and culturally interrelated and interconnected over many miles of desert land within the Tribe's traditional territory, within and outside the exterior Reservation boundaries.

30.    Cultural resources of significance to the Tribe are located on the lands that are the subject of this action and adjacent lands.

31.    Destruction or damage to any one cultural resource contributes to destruction of the Tribe's culture, history, and religion.  Injury to the Tribe's cultural resources causes injury to the Tribe and its people.

32.    The Tribe has repeatedly expressed its concern to Interior with regard to protection and preservation of the resources located within the IVS Project area.

33.    The Tribe, at the direction of the Tribal Council and support of the Cultural Committee, has participated in the administrative process relating to the IVS Project to identify the importance of the Project area and to advocate for preservation of the Project area in a manner consistent with FLPMA, the CDCA Plan, the NHPA, and other federal cultural resource protection laws, regulations, and policies.

34.    The Tribe's interest in this action is not limited to cultural resources.  The Tribe and its members also have an interest in preserving the quality of the land, water, air, fauna, and flora within the Tribe's traditional territory, within and outside the Reservation. Specifically, the Tribe is concerned with impacts to the habitat of Flat Tailed Horned Lizards on lands proposed for development, as the lizard is a central part of the Tribe's creation story.

**B.    General Allegations Regarding the NEPA Process for the Imperial Valley ROD.**

35.    On October 17, 2008, Interior published Notice of Intent to Prepare an Environmental Impact Statement related to the applicant's request for a right-of-way to construct the IVS Project on BLM-administered public land.

36.    On February 22, 2010, Interior published a Draft Environmental Impact Statement (DEIS) for the IVS Project.

37.     The DEIS confirms that the IVS Project is proposed for development in an area of high cultural sensitivity.  The DEIS reports that 432 cultural resource sites were identified in the Project area and that the Project "may wholly or partially destroy all archaeological sites on the surface of the project area."  DEIS, at C.2-106.  The Final EIS identifies 459 sites in the Area of Potential Effects.  FEIS, at 4.5-1.

38.     The DEIS acknowledges that Interior did not determine the historical or cultural significance of the sites within the Project area.  DEIS at C.2-130.  Similarly, no NHPA-eligibility determinations occurred prior to completion of the FEIS.  FEIS, at 4.5-1.

39.     The Tribe submitted comments on the DEIS on May 17, 2010, which recommended that Interior should deny the right-of-way application and not amend the CDCA Plan given the destruction that would occur to cultural and biological resources.

40.     Interior could not and did not adequately analyze, or give a "hard look" to the cultural impacts of the IVS Project in its Draft and Final EIS, because Interior lacked information on the number of resources present in the Project area, the eligibility of those resources for listing on the National Register, and the significance of the resources to the affected tribes, including the Quechan Tribe.

41.     According to the DEIS, approximately one million acres of land are currently proposed for foreseeable solar and wind energy utility development on southern California desert lands.  DEIS, page ES-31.

42.     The DEIS failed to provide substantive analysis of the cumulative impact to cultural resources resulting from the development of the IVS Project in conjunction with other existing and foreseeable energy developments on California desert lands.  The cumulative impacts analysis contains only general and conclusory statements.  This deficiency is repeated in the Final EIS.

43. The Tribe's comments highlighted the inadequacy of Interior's analysis of the cumulative impact of the IVS Project in conjunction with other known and foreseeable energy developments proposed for California-desert lands.

44. Interior published its Final EIS on July 28, 2010.

45. The Final EIS failed to address the Tribe's comments, failed to substantively evaluate the cumulative impacts to the resources located on California desert lands and the California Desert Conservation Area resulting from approximately one million acres of new energy development; and failed to give a "hard look" at the impacts that the IVS Project would have on the cultural resources of the Class L lands at issue here.

46. The Final EIS could not provide decision-makers with necessary information on the cultural significance of the Project Area or the IVS Project's impact on NHPA-eligible cultural resources, because the Final EIS was drafted prior to any determinations of NHPA-eligibility and prior to meaningful tribal consultation. See FEIS, at 4.5-1 (confirming that "evaluations regarding the eligibility of the 459 resources in the Area of Potential Effects for listing in the National Register of Historic Places (National Register) have not yet been completed").

C. **General Allegations Relating to the NHPA Process For the Imperial Valley ROD.**

47. Interior approved the Imperial Valley ROD prior to completing the steps required by Section 106 of the NHPA and the regulations at 36 CFR Part 800. Instead, Interior has attempted to defer its obligation to comply with Section 106 through the development of a Programmatic Agreement.

48. The Tribe repeatedly objected to Interior's proposal to defer completion of the NHPA-Section 106 process until after issuance of the right-of-way.

49. On May 4, 2010, the Tribe submitted comments on Interior's proposed Draft Programmatic Agreement. The Tribe informed Interior that the use of a Programmatic

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 9

Agreement for the IVS Project was not consistent with Section 106 of the NHPA or the Advisory Council regulations located at 36 CFR Part 800.

50.     On June 4, 2010, the Tribe wrote a letter to Jim Stobaugh, BLM Project Manager, objecting that Interior was arbitrarily and unlawfully rushing the administrative process, failing to adequately consult and consider the Tribe's concerns, and failing to comply with the requirements of the NHPA solely to meet a schedule requested by the applicant.

51.     On June 14, 2010, the Tribe commented on a revised draft of a Programmatic Agreement, noting that "very few of the Tribe's comments were addressed in the revised draft" and that "the Tribe continues to generally object to the development of a PA in this context and also continues to object to the failure of BLM to share cultural resource reports and to consult with the Tribe on a government-to-government basis."

52.     On August 4, 2010, Quechan President Mike Jackson again wrote to Interior objecting that Interior had not yet met with the Tribal Council to consult on the IVS Project and objecting that Interior had failed to comply with its legal duties.

53.     Interior did not determine the NHPA-eligibility of resources located within the Project Area prior to approving the Imperial Valley ROD and the Programmatic Agreement, and made its decision without taking the required "hard look" at the affected cultural environment or the impacts to NHPA-eligible resources.

54.     Other than a desire to satisfy the applicant's financing objectives, Interior has not provided any reason that prevents it from completing the NHPA-Section 106 process prior to reaching a decision on the IVS Project.

55.     Interior has failed to provide any lawful justification for use of a Programmatic Agreement in this proceeding or for its arbitrary and capricious failure to complete the required NHPA-Section 106 process before reaching a final decision on the IVS Project.

**D.    General Allegations Relating to CDCA Plan-Amendment.**

56.    The Tribe filed comments recommending that Interior reject and deny the proposed amendment to the CDCA Plan to authorize this specific project on May 17, 2010.

57.    Interior published its Proposed Resource Management Plan-Amendment (PRMP-A) on July 28, 2010.

58.    In the PRMP-A, Interior proposed to amend the CDCA Plan to permit development of the IVS Project on the Class L lands.

59.    In the PRMP-A, Interior did not consider or evaluate whether development of a 30,000 "suncatcher," 709-MW power project, which will be one of the largest solar projects in the world, constitutes a "lower-intensity" use as required by the Class L land use designation in the CDCA Plan.

60.    In the PRMP-A, Interior failed to analyze whether other Class M or Class I lands within the CDCA could accommodate the applicant's project.

61.    On August 24, 2010, the Tribe filed a written protest of the PRMP-A pursuant to 43 C.F.R. § 1501.5-2, arguing that the PRMP-A would result in permanent damage and destruction to cultural and biological resources in conflict with the applicable Class-L land use designation, in addition to other objections relating to the underlying NEPA and NHPA administrative process.

62.    On October 5, 2010, BLM Director Robert Abbey denied the Tribe's protest in a form letter sent to the Tribe's attorney and directed the Tribe to a Protest Resolution Report that contained conclusory responses to the Tribe's protest issues.

**E.    Additional General Allegations.**

63.    The Imperial Valley ROD signed by Director Abbey on October 4, 2010, and by Secretary Salazar on October 5, 2010, stated that the ROD was the final decision of Interior and that any review of the ROD must occur in federal district court.

64.     On or around this time, Interior circulated its proposed NHPA Programmatic Agreement for final signature and approval over the objections of the Tribe.

65.     The decision to approve the IVS Project, the Imperial Valley ROD, and the Amendment to the CDCA Plan will directly result in the destruction of hundreds of cultural resources and destruction of the habitat of sensitive biological species.

66.     Interior arbitrarily placed the IVS Project on an artificial "fast-track" in order to achieve the applicant's goal of obtaining millions of dollars of federally-available financing that purportedly required project approval prior to the end of 2010.

67.     Interior arbitrarily and unlawfully rushed the NEPA and Section 106 process, and failed to adequately evaluate the impacts associated with the IVS Project, in order to reach a pre-determined approval decision prior to the close of 2010.

68.     Despite Interior and the applicant's efforts to "fast-track" the review of the IVS Project, Congress did not waive or limit the applicability of any federal laws or regulations related to compliance with NEPA, the NHPA, FLPMA, or other laws with regard to the IVS Project.  Full compliance with applicable federal laws is mandatory.

## V.     CLAIMS FOR RELIEF

**CLAIM ONE:     Interior Violated the FLPMA, the APA, and the CDCA Plan By Amending the CDCA Plan to Permit Development of the IVS Project on Class L Lands.**

69.     The Tribe hereby incorporates, re-states, and re-alleges all preceding paragraphs.

70.     In 1976, Congress passed the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1701 et seq., to direct management and administration of federally-owned public lands in the United States.

71.     In FLPMA, Congress identified one specific area for special management prescriptions, the California Desert Conservation Area.  43 U.S.C. § 1781.

72.     Congress demanded a plan for "the immediate and future protection and administration of the public lands in the California desert within the framework of a program

of multiple use and sustained yield, and the maintenance of environmental quality." 43 U.S.C. § 1781(b).

73. Pursuant to Congressional mandate, the Department of the Interior prepared the California Desert Conservation Area Plan in 1980. 43 U.S.C. § 1781(d).

74. The CDCA Plan divides the public lands within the CDCA into four "classes" – Class C, Class L, Class M, and Class I. "Class L (Limited Use) protects sensitive, natural, scenic, ecological, and cultural resource values. Public lands designated as Class L are managed to provide for generally lower-intensity, carefully controlled multiple use of resources, while ensuring that sensitive values are not significantly diminished." CDCA Plan, at p. 13. "Class M (Moderate Use) is based upon a controlled balance between higher intensity use and protection of public lands . . . [providing] for a wide variety of present and future uses such as mining, livestock grazing, recreation, energy, and utility development." *Id.* "Class I is an 'Intensive use' class. Its purpose is to provide for concentrated use of lands and resources to meet human needs." *Id.*

75. Nearly four million acres of land within the CDCA is designated for Moderate or Intensive Uses under Class M or Class I, while nearly 6 million acres of land within the CDCA is designated for Limited Use under Class L.

76. The CDCA Plan does not prohibit the use of Class L lands for solar energy, but solar energy development is permissible on Class L lands only if it qualifies as a "lower-intensity, carefully controlled multiple use of resources, while ensuring that sensitive values are not significantly diminished." CDCA Plan, p. 13.

77. The CDCA Plan further makes clear that consumptive uses on Class L lands are allowed "only up to the point that sensitive and natural and cultural values might be degraded." CDCA Plan, p. 21.

78.     Within the CDCA, moderate or higher-intensity solar energy developments, and other solar energy projects where sensitive desert resources might be degraded, (like the IVS Project) are restricted to Class M or Class I lands.

79.     The IVS Project proposes to construct 30,000 individual solar pedestals over an area of 6,144 acres of Class L lands, in addition to necessary roads, buildings, and other infrastructure necessary to operate and maintain the 30,000 "suncatchers."

80.     The IVS Project is a 709-MW project, which will be the largest or one of the largest solar energy utility developments in the entire United States.

81.     The IVS Project is not a lower-intensity use of CDCA lands and is thus prohibited on Class L lands in the CDCA.

82.     The 709-MW, 30,000 unit, IVS Project will necessarily result in the complete destruction and displacement of cultural and biological resources over 6,144 acres of public lands designated as Class L under the CDCA Plan, including cultural resources eligible for listing under the NHPA and habitat of species that are presently being considered for listing under the Endangered Species Act.

83.     Interior's decision to approve the Proposed Plan Amendment to the CDCA Plan to authorize development of the IVS Project on these Class L lands violates the letter, spirit, and intent of the CDCA Plan, violates FLPMA, and constitutes arbitrary, capricious action, an abuse of discretion, and unlawful conduct under the Administrative Procedures Act (APA).

84.     Interior's decision to approve the Proposed Plan Amendment failed to "give full consideration to Native American values in land use planning and management decisions" as required by the CDCA Plan.

85.     Interior conducted its analysis of the Proposed Plan Amendment in an arbitrary and capricious manner in violation of the APA, failed to engage in reasoned decision-making, and failed to rationally analyze factors required for consideration by the CDCA Plan.

86. As a result of these violations, the Court should vacate the Imperial Valley ROD, including the Amendment to the CDCA Plan, and permanently enjoin development of the IVS Project on these Class L lands.

**CLAIM TWO:** **The IVS Project Will Result in Undue Impairment and Unnecessary and Undue Degradation of the Public Lands In Violation of FLPMA.**

87. The Tribe hereby incorporates, re-states, and re-alleges all preceding paragraphs.

88. The Secretary of the Interior is required to manage the public lands in a manner that prevents "permanent impairment" of the lands and to "take any action necessary to prevent unnecessary or undue degradation of the [public] lands." 43 U.S.C. §§ 1702(c); 1732(b).

89. With specific regard to the lands in the CDCA, Congress also prohibits any "undue impairment" of the CDCA lands. 43 U.S.C. § 1781(f).

90. The IVS Project will result in undue impairment, and undue and unnecessary degradation, of lands that are designated for heightened resource protection as Class L lands in the CDCA Plan.

91. Approval of the IVS Project, which will permanently degrade and destroy hundreds of cultural resource sites and which will destroy habitat for sensitive biological species on lands that have been affirmatively designated and set aside for only low-intensity uses, constitutes unnecessary and undue degradation in violation of FLPMA.

**CLAIM THREE:** **Interior Violated NEPA By Failing to Conduct an Adequate Cumulative Impacts Analysis.**

92. The Tribe hereby incorporates, re-states, and re-alleges all preceding paragraphs.

93. Pursuant to NEPA, an Environmental Impact Statement must thoroughly analyze the "cumulative impact" of the federal agency's proposed action. 40 C.F.R. § 1508.7; 40 C.F.R. § 1508.25(a)(2).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 15

94. A cumulative impact analysis must give a sufficiently detailed catalogue of past, present, and future projects, and provide adequate analysis about how these projects, and differences between the projects, are thought to have impacted the environment. General statements about "possible effects" and "some risk" do not constitute an adequate analysis. Some quantified or detailed information analyzing the cumulative impacts is required.

95. The FEIS lacks substantive analysis of the impact to cultural or biological resources that will result from the extensive proposed development of energy projects on California desert lands in and around the California Desert Conservation Area.

96. The FEIS fails to provide any substantive quantification or detailed analysis about how the development of the IVS Project, in conjunction with the numerous other existing and foreseeable projects in the region, will impact cultural or biological resources on desert lands in and around the California Desert Conservation Area.

97. In violation of NEPA, the FEIS provides only conclusory statements about cumulative impacts, without providing substantive analysis about how the numerous proposed energy developments will affect cultural and biological resources designated for protection on desert lands in and around the California Desert Conservation Area.

98. The scope of the United States' cumulative impacts review is limited to an arbitrary and unreasonably narrow geographic area.

99. The United States has also violated NEPA by executing the Imperial Valley ROD in advance of preparing a full programmatic EIS that reviews the cumulative impact of all proposed solar development projects on federal lands in and around the California Desert Conservation Area.

100. Due to the inadequate cumulative impacts analysis, the FEIS and the Imperial Valley ROD are unlawful and must be vacated, and the FEIS remanded back to Interior for further analysis.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 16

1   **CLAIM FOUR:**     **Interior Violated NEPA By Failing to Prepare a**
                         **Programmatic EIS Prior to Approval of the Imperial**
2                        **Valley ROD.**

3       101.    The Tribe hereby incorporates, re-states, and re-alleges all preceding paragraphs.

4       102.    NEPA requires Interior to prepare a Programmatic Environmental Impact

5   Statement (PEIS) where it proposes a program or series of connected, similar, or cumulative

6   actions.

7       103.    Interior has engaged in a concerted and systemic effort to approve applications

8   for large, utility-scale solar projects on lands within and surrounding the California Desert

9   Conservation Area, and in the broader Southwestern United States.

10      104.    Interior has acknowledged the need to prepare a PEIS related to solar energy

11  development on public lands in the Southwestern United States and issued notice of its intent

12  to prepare a PEIS in 2008.  Interior subsequently delayed completion of a PEIS and no PEIS

13  has been completed that provides a cumulative analysis of the environmental impacts of

14  developing hundreds of thousands of acres of public lands for solar energy.

15      105.    Interior has violated NEPA by approving the Imperial Valley ROD without

16  considering the overall and cumulative environmental effects of its program of solar energy

17  development on desert resources in a single comprehensive PEIS.

18      106.    The Imperial Valley ROD must be vacated and this matter remanded to Interior

19  for completion of a complete Programmatic Environmental Impact Statement on Interior's

20  program of solar energy development, specifically on the public lands in and around the

21  California Desert Conservation Area.

22      **CLAIM FIVE:**     **Interior Violated NEPA by Failing to Adequately Identify**
                            **and Evaluate the Significance of the Affected Cultural**
23                          **Environment.**
24

25      107.    The Tribe hereby incorporates, re-states, and re-alleges all preceding paragraphs.

26

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 17

108.   NEPA requires Interior to identify the affected environment and take a "hard look" at the direct and indirect environmental consequences of its proposed action, in advance of approving the action.

109.   Interior drafted its Draft and Final EIS, and reached its approval decision without evaluating the significance of the cultural resources that exist within the IVS Project area in terms of eligibility under the National Register and in terms of cultural significance to the Quechan Tribe and other affected Indian tribes.

110.   Approving the IVS Project prior to evaluating the cultural significance of the affected resources, and without providing that information to the decision-makers and affected public in advance of a decision, violates NEPA.

**CLAIM SIX:**          **Interior Violated the NHPA By Executing the Imperial Valley ROD Prior to Completion of the Section 106 Process.**

111.   The Tribe hereby incorporates, re-states, and re-alleges all preceding paragraphs.

112.   Section 106 of the National Historic Preservation Act, 16 U.S.C. § 470f, requires that agencies of the United States "shall, prior to approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of the license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register."

113.   Like NEPA, the NHPA is designed to ensure that federal decision-makers thoroughly evaluate the impacts of their proposed actions on NHPA-eligible resources prior to taking final action.

114.   Prior to approval of a federal undertaking, the agency must: (a) identify the "historic properties" within the area of potential effects; (b) evaluate the potential effects that the undertaking may have on historic properties; and (c) resolve the adverse effects through the development of mitigation measures.  36 C.F.R. §§ 800.4; 800.5; 800.6.  Throughout all of

these processes, the agency must consult with Indian tribes that attach religious and cultural significance to properties within the affected area. 36 C.F.R. § 800.3(f)(2); 800.4(a)(4); 800.5(c)(2)(iii); 800.6(a); 800.6(b)(2).

115. Interior did not complete the steps of the Section 106 process, as described in the preceding paragraph, prior to executing the Imperial Valley ROD. Thus, Interior has violated the NHPA, and the Imperial Valley ROD must be vacated and remanded to Interior pending completion of the Section 106 process.

116. Interior's determination that it complied with the NHPA by executing a Programmatic Agreement in this case is arbitrary, capricious, an abuse of discretion, and unlawful.

117. None of the factors identified in 36 C.F.R. § 800.14(b)(1) are present in this case or authorize the use of a Programmatic Agreement for the IVS Project.

118. To the extent that Interior contends that 36 C.F.R. §§ 800.14(b)(1) authorizes use of a Programmatic Agreement in this case, that regulation is not consistent with the NHPA and unlawful as applied to the facts here.

119. Interior's repeated assertion that "the effects on historic properties could not be fully determined prior to approval of the undertaking" is not supported by the facts in the record, is arbitrary, capricious, an abuse of discretion, and unlawful.

120. Interior has failed to identify any legitimate reason why the Section 106 process could not be completed in its entirety prior to execution of the Imperial Valley ROD.

121. Interior has failed to identify any legitimate reason why the Section 106 process related to Phase I of the IVS Project could not be completed prior to execution of the Imperial Valley ROD.

122. Interior's failure to complete the Section 106 process prior to approval of the Imperial Valley ROD, solely in order to satisfy the financing objectives of a private applicant is arbitrary, capricious, an abuse of discretion, and unlawful agency action.

123.   Interior has also failed to fulfill its obligation to meaningfully consult with the Tribe in the Section 106 process; instead, the United States interpreted its consultation obligation as being satisfied through transmission of general project notices and conducting informational status updates open to the general public.  These public processes do not constitute a meaningful interchange of information on a government-to-government basis.

124.   The Tribe repeatedly raised objections to this procedure of "consultation" via general public informational meetings, but the United States refused to alter its course of action and refused to formally consult with the Tribe on a government-to-government basis.

125.   Interior's unlawful failure to complete the Section 106 process prior to execution of the Imperial Valley ROD violates the NHPA and requires that the Imperial Valley ROD be vacated and this matter remanded to Interior for completion of the Section 106 process.

**CLAIM SEVEN:**      **Interior Violated the APA Through Its Arbitrary, Capricious, and Unlawful Actions.**

126.   The Tribe hereby incorporates, re-states, and re-alleges all preceding paragraphs.

127.   The Administrative Procedures Act ("APA"), 5 U.S.C. § 706, requires a reviewing court to hold unlawful and set aside agency actions, findings, and conclusions, which are arbitrary, capricious, an abuse of discretion, or not in accordance with law.

128.   Interior's actions identified herein, including paragraphs 69 through 125 constitute arbitrary, capricious, and unlawful decisions in violation of the APA.

129.   Interior's approval of the Proposed Plan Amendment to the CDCA Plan is arbitrary, capricious, an abuse of discretion and not in accordance with law, because the decision authorizes a commercial, utility-scale, high-intensity private solar project on Class L lands that permit only lower-intensity uses.  Interior failed to evaluate or consider whether the IVS Project is a "lower-intensity" use permissible on Class L lands.

130. Interior arbitrarily and unlawfully applied factors, guidelines, and decision-criteria in the CDCA Plan; for example, Interior failed to evaluate whether any alternative locations in the CDCA (e.g., locations on Class M or Class I lands) are available. Interior also ignored decision-criteria that mandate "avoidance of sensitive resources wherever possible" and "conformance to local land use plans wherever possible." See CDCA Plan, pages 93 (decision criteria) and 121 (analysis of proposed amendments and decision-criteria).

131. Interior's denial of the Tribe's August 24, 2010 protest was arbitrary, capricious, an abuse of discretion and not in accordance with law.

132. Interior's execution of the Imperial Valley ROD without completing a valid cumulative impacts analysis in accordance with NEPA is arbitrary, capricious, an abuse of discretion and not in accordance with law.

133. Interior's execution of the Imperial Valley ROD prior to completing a Programmatic Environmental Impact Statement on the impacts of Interior's concerted and systemic program of solar energy development in the California desert is arbitrary, capricious, an abuse of discretion and not in accordance with law.

134. Interior's execution of the Imperial Valley ROD without completing a valid evaluation of the significance of the affected cultural resources and of the impacts on NHPA-eligible resources in compliance with the requirements of NEPA and Section 106 of the NHPA is arbitrary, capricious, an abuse of discretion and not in accordance with law.

135. Interior's approval of a Programmatic Agreement in lieu of completing the NHPA Section 106 process prior to executing the Imperial Valley ROD is arbitrary, capricious, an abuse of discretion and not in accordance with law.

136. Interior's approval of the Imperial Valley ROD and the Plan Amendment to the CDCA Plan are also agency actions undertaken without compliance with procedures required by law.

137.   The Tribe has no plain, speedy, and adequate remedy in the course of law and absent immediate judicial intervention, the Tribe will suffer irreparable injury.

## VI.   PRAYER FOR RELIEF

138.   WHEREFORE, the Plaintiff Quechan Indian Tribe prays for judgment as hereinafter set forth:

139.   For a judgment declaring that Interior violated FLPMA, the APA, and the CDCA Plan by approving the Proposed Plan Amendment to the California Desert Conservation Area Plan;

140.   For a judgment declaring that Interior violated FLPMA and the APA by authorizing conduct that constitutes undue impairment of CDCA lands, and unnecessary and undue degradation of public lands;

141.   For a judgment declaring that Interior violated NEPA and the APA by failing to prepare an adequate cumulative impacts analysis in its FEIS prior to execution of the Imperial Valley ROD, by failing to prepare a Programmatic EIS prior to execution of the Imperial Valley ROD, and by failing to take a "hard look" at the impacts of the IVS Project on affected cultural resources;

142.   For a judgment declaring that Interior violated the NHPA and the APA by failing to complete the Section 106 process, and by failing to meaningfully consult with the Quechan Tribe, prior to execution of the Imperial Valley ROD;

143.   For a judgment that Interior engaged in conduct that is arbitrary, capricious, an abuse of discretion, and unlawful, and failed to engage in reasoned decision-making, under the APA;

144.   For an order vacating the Imperial Valley ROD and the Amendment to the California Desert Conservation Area Plan;

145.   For a temporary, preliminary, and permanent injunction prohibiting development of the IVS Project on the Class L lands that are the subject of this action;

146.   For a temporary, preliminary, and permanent injunction prohibiting any implementation of the IVS Project of any kind, including any ground-disturbing activities, or any issuance of future Notices to Proceed, until Interior completes a valid analysis of direct and cumulative impacts pursuant to NEPA;

147.   For a temporary, preliminary, and permanent injunction prohibiting any implementation of the IVS Project of any kind, including any ground-disturbing activities, or any issuance of future Notices to Proceed, until Interior completes a Programmatic EIS on the impacts of Interior's concerted and systemic program of solar energy development in the California desert;

148.   For a temporary, preliminary, and permanent injunction prohibiting any implementation of the IVS Project of any kind, including any ground-disturbing activities, or any issuance of future Notices to Proceed, until Interior completes the Section 106 process pursuant to NHPA;

149.   For costs of suit, including reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

150.   For such other injunctive, equitable, and other relief as the Court may deem just and proper to provide complete relief to the Tribe.

DATED this 29th day of October, 2010.

MORISSET, SCHLOSSER & JOZWIAK

_____ s/*Frank R. Jozwiak* _____
Frank R. Jozwiak
Thane D. Somerville
Attorneys for the Quechan Tribe
of the Fort Yuma Indian Reservation
801 Second Avenue, Suite 1115
Seattle, WA 98104-1909
f.jozwiak@msaj.com
t.somerville@msaj.com
Tel:  206-386-5200
Fax:  206-386-7322

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Quechan Tribe of the Fort Yuma Indian Reservation

**(b)** County of Residence of First Listed Plaintiff _Imperial 87_
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Frank R. Jozwiak, Morisset, Schlosser & Jozwiak
801 Second Ave., Ste. 1115, Seattle, WA 98104 Tel: 206-386-5200

## DEFENDANTS
U.S. Department of the Interior, U.S. Bureau of Land Management, et al.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

'10CV2241 LAB CAB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee
☐ 465 Other Immigration Actions

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☒ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
5 U.S.C. 551, et seq.; 42 U.S.C. 4332, et seq.; 16 U.S.C. 470, et seq.; 43 U.S.C. 1701 et seq.; 28 U.S.C. 2201
Brief description of cause:
Request for injunctive relief; violation of APA, NEPA, FLPMA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE
October 29, 2010

SIGNATURE OF ATTORNEY OF RECORD
s/Frank R. Jozwiak

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____